# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN NASH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:09CV26MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Plaintiff John Nash for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed a brief in support of the Complaint. Doc. 16. Defendant filed a brief in support of the Answer. Doc. 21. Plaintiff filed a Reply. Doc. 22. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 9.

## I.
## PROCEDURAL HISTORY

Plaintiff filed his application for disability benefits on March 20, 2007. Tr. 90. The application was denied, and Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). Tr. 64-68, 71. A hearing was held before an ALJ on June 17, 2008. Tr. 28-59. By decision dated September 19, 2008, the ALJ found Plaintiff not disabled through the date of the decision. Tr. 14-27. Plaintiff filed a timely request for review with the Appeals Council, which denied Plaintiff's request on April 8, 2009. Tr. 1-13. As such, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff in the matter under consideration contends that he became disabled commencing May 19, 2004, due to "back, shoulder, right knee, depression, etc." Tr. 90, 109. At the time of the hearing, Plaintiff was forty-four years old and had a high school diploma. The ALJ found that Plaintiff has severe impairments of affective mood disorder, disorders of the back and shoulder, and arthritis. The ALJ further found that Plaintiff has moderate limitations of social functioning, concentration, persistence, and pace. Additionally, after determining Plaintiff's RFC, and after considering the testimony of a VE, the ALJ concluded, because there is work in the economy which a person with Plaintiff's RFC can perform, that Plaintiff is not disabled. Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ's RFC determination was not based on substantial evidence; because the ALJ erred in not granting substantial weight to the opinion of Plaintiff's treating physician, Imelda Cabalar, M.D.; because the ALJ did not give appropriate weight to the opinion of David Lipsitz, Ph.D., who performed a psychological examination of Plaintiff at the request of the ALJ; and because the ALJ's credibility findings are not supported by substantial evidence.

A.     **Plaintiff's RFC:**

The ALJ found that Plaintiff has the RFC to perform sedentary work with certain limitations. Specifically, the ALJ found that Plaintiff can lift 20 pounds, occasionally, and 10 pounds, frequently; that he can stand and walk for 2 hours in an 8-hour workday; that he can sit for 6 hours in an 8-hour workday; that Plaintiff can occasionally climb, balance, stoop, crouch, kneel, and crawl; that he can not reach overhead with his right arm; that Plaintiff should have no more than minimal exposure to

vibrations; and that Plaintiff is limited to simple, repetitive tasks with no more than occasional interaction with the public, co-workers, and supervisors. Tr. 23.

20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7). Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id. It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled."

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a"'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work

setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." <u>Id.</u> Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." <u>Id.</u>

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." <u>Id.</u> at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." <u>Goff</u>, 421 F.3d at 790 (citing <u>Eichelberger</u>, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. <u>Charles v. Barnhart</u>, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." <u>Goff</u>, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." <u>Id.</u> In any case, "[a] disability claimant has the burden to establish her RFC." <u>Eichelberger</u>, 390 F.3d at 591 (citing <u>Masterson</u>, 363 F.3d at 737).

Upon making an RFC assessment an ALJ must first identify a claimant's functional limitations or restrictions and then assess his work-related abilities on a function-by-function basis. <u>See</u>

Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). In the matter under consideration, only after defining Plaintiff's limitations and restrictions did the ALJ conclude that Plaintiff's restrictions do not preclude him from engaging in sedentary work.

Upon determining Plaintiff's RFC, the ALJ in this matter considered that Plaintiff's allegations were inconsistent with the record as a whole, including the medical evidence. Tr. 19-21. In particular, the ALJ considered that Plaintiff's MRIs revealed "very mild" multi-level degenerative disc disease in Plaintiff's cervical, thoracic, and lumbar spines. Tr. 19. The record reflects that an April 7, 2004 MRI showed a partial tear of the biceps longus tendon and nonspecific fluid within the biceps longus tendon shealth, which "may reflect tenosynovitis"; that there was a mild partial tear involving the superior fibers of the subscapularis tendon; and that there was "no discrete full thickness rotator cuff tendon tear." Tr. 211. Plaintiff had surgery on his shoulder on May 19, 2004. Plaintiff's primary care doctor, James Rotramel, M.D., reported in December 2004, that Plaintiff had 4/5 strength with all resisted shoulder motion and that Plaintiff had continued right shoulder pain. Tr. 272. Dr. Rotramel also reported on this date that he recommended that Plaintiff have surgery and that ""[u]nfortunately," Plaintiff did not have "insurance at this point in time, and apparently he [was] seeking legal advice regarding his condition."[1] Tr. 272.

---

[1]  A claimant's "failure to seek medical assistance for [his] alleged physical ... impairments contradicts [his] subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits." Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997)). See also Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). Even assuming that Plaintiff's financial resources were insufficient, failure to seek treatment offered to indigents detracts from a claim that a claimant did not seek medical treatment because of inadequate financial resources. See Riggins, 177 F.3d at 693.

Furthermore, "a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits." Tome v. Schweiker, 724 F.2d 711, 713-714 (8th Cir. 1984) (citing 20 C.F.R. §§ 404.1518, 404.1530) (holding that ALJ's credibility determination was against

Plaintiff was seen by Raymond Leung, M.D., on February 19, 2005, on which date Dr. Leung reported that Plaintiff had no syanosis, clubbing, or edema in his extremities; that Plaintiff's gait was within normal limits; that Plaintiff was able to walk 50 feet unassisted; that he was able to squat 2/3 of the way down; that he had no difficulty getting on and off the examination table; that he was able to oppose the thumbs to the fingers; that he had very little range of motion in the right shoulder; that his right grip strength was 4+/5; that his right arm strength was 4/5; that Plaintiff had difficulty using his right arm; and that Plaintiff would have difficulties with prolonged walking, bending, lifting, climbing, and squatting. Tr. 280.

July 8, 2006 x-rays showed no fracture or dislocation. Tr. 275. Also, an October 12, 2006 MRI of Plaintiff's right knee showed a bucket handle tear involving the posterior horn of the medial meniscus and a complex tear involving the posterior horn of the lateral meniscus; that there was an abnormal appearance of the ACL; that there was moderate three-compartment degenerative osteoarthritis; and that there was moderate joint effusion. Tr. 233. The impression from an MRI of the cervical spine performed on this same date was "very mild multi-level bulging."Tr. 230. An October 12, 2006 MRI of the thoracic spine showed mild multi-level degenerative endplate change, degenerative disc disease, "clinical significance [] uncertain," and degenerative facet arthropathy, "a little more prominent on the right at T11-12 than on the left." Tr. 231. An October 12, 2006 MRI of the lumbar spine showed mild degenerative disc disease, degenerative facet arthropathy, and tiny focal central protrusion at L5-S1. Tr. 232.

Dr. Cabalar reported on April 24, 2007, that Plaintiff was well developed and in no apparent distress; that Plaintiff had no joint effusion with full range of motion; that both elbows and wrists had

---

the substantial weight of the evidence where the diabetic plaintiff did not follow her dietary and insulin regimen because she "lacked the financial resources and the discipline and education needed to understand and follow a strict dietary and insulin regimen")).

full range of motion; that both hips had full range of motion and no tenderness; that the right knee had tenderness and crepitations and no joint effusion with full range of motion; that the left knee had crepitations and no tenderness or effusion with full range of motion; that both ankles had full range of motion; and that Plaintiff had tenderness in the cervical and lumbosacral areas. Tr. 261. Also, on September 5, 2007, and January 9, 2008, Dr. Cabalar reported that Plaintiff had decreased range of motion in both shoulders; that he had full range of motion in both elbows, in his left hip, right and left knees, and both ankles; and that he had tenderness in the cervical and lumbosacral areas. Tr. 267, 269. On September 5, 2007, Dr. Cabalar also found that Plaintiff had full range of motion in his right hip and on January 9, 2008, she reported that Plaintiff had full range of motion and no tenderness in the cervical spine. Subsequently, on May 7, 2008, Dr. Cabalar reported that Plaintiff had full range of motion in both elbows, both ankles, and the cervical spine and decreased range of motion in both hips. Tr. 270. On May 13, 2008, Dr. Cabalar completed a physician statement in which she concluded that Plaintiff can stand/walk less than two hours and sit about two hours in an eight hour day; that he needs a job that permits shifting positions at will; that he can not engage in repetitive lifting; that he can occasionally lift less than ten pounds; and that he is limited in the upper extremities. Tr. 265.

In regard to Plaintiff's alleged mental impairment, the record reflects that he was seen at the Arthur Center on October 13, 2006, at which time John H. Hall, M.D., reported that Plaintiff's thoughts were "guarded"; that Plaintiff denied any intent to harm himself; that he said he had suicidal ideation, at times; that he was alert; that Plaintiff's memory was "okay"; and that, at Axis IV, Plaintiff had psychological and environmental stressors, including employment, financial, and social stressors. Tr. 239. On November 29, 2006, Dr. Hall reported that Plaintiff was alert and oriented; that he had a flat affect and depressed mood; and that he had limited insight and judgment. Tr. 237. On December 22, 2006, Dr. Hall reported that Plaintiff was suffering from paranoia, irritability, and suicidal

ideations. Tr. 236. On March 30, 2007, Dr. Hall reported that Plaintiff's depression was "bad" and that he was taking medication. Tr. 234. Dr. Hall reported on April 8, 2008, that Plaintiff had good eye contact and goal directed thoughts. Tr. 286. Dr. Hall reported on June 8, 2008, that Plaintiff was sleeping better and that this was "not as good as it could be." Tr. 285. On February 8, 2009, Dr. Hall reported that Plaintiff had goal directed thoughts and good eye contact. Tr. 287. The handwritten records of the Arthur Center and Dr. Hall are not otherwise legible.

Plaintiff had a post-hearing psychological examination, on July 28, 2008, conducted by Dr. Lipsitz. Dr. Lipsitz reported that Plaintiff appeared in "some acute distress"; that he was oriented to time, place and person; that there was no evidence of any active psychotic functioning, no delusions, or hallucinations; that Plaintiff stated that "sometimes he feels paranoid"; that his affect was bright and his mood depressed; that Plaintiff's intellectual functioning appeared to be within the "low average range"; that Plaintiff's short-term memory was "somewhat deficient"; that his remote memory was adequate; that his concentration was good; that he was able to handle minor mathematical functions; that his insight and judgment were poor; that his thought processes were "primarily preoccupied" with his physical pain and his inability to function within society; and that, at Axis I, Plaintiff had major depression, rule out bipolar disorder, at Axis II, personality disorder, NOS, at Axis III, disease of the musculoskeletal system, at Axis IV, occupational problems, problems

with primary support group, and problems with social environment, and at Axis V, a GAF of 45. [2] Tr. 293-300.

In a Medical Source Statement of Ability to Do Work-Related Activities (Mental), completed on July 25, 2008, Dr. Lipsitz reported that Plaintiff had no limitations in regard to his ability to understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. Dr. Lipsitz further reported that Plaintiff had an extreme limitation in regard to interacting appropriately with the public and marked limitations in regard to interacting appropriately with supervisors and co-workers and responding appropriately to usual work situations and to changes in a routine work setting. Tr. 298-99.

As required by the Regulations and case law, upon determining Plaintiff's RFC, the ALJ addressed Plaintiff's medical records prior to determining his RFC. See Eichelberger, 390 F.3d at 591; Lauer, 245 F.3d at 704. Significantly, upon determining Plaintiff's RFC, the ALJ took into consideration Plaintiff's physical and mental limitations which he found credible based upon the medical records, as well as the record as a whole. See Tucker, 363 F.3d at 783. In particular, the ALJ took into consideration some limitations suggested by Dr. Lipsitz, as the ALJ found that Plaintiff is limited in regard to nature of tasks he can perform and limited in regard to the extent of interaction

---

[2]     Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

me may have with others.[3]  Likewise, the ALJ took into consideration limitations supported by Dr. Cabalar's treatment notes as well as those supported by x-ray and MRI reports.  The court finds that the ALJ's assessment of Plaintiff's RFC is consistent with the relevant medical evidence and that it is based on substantial evidence in this regard.  See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

To the extent that the ALJ did not specifically mention each and every medical record, an ALJ's failure to cite specific evidence does not reflect that the ALJ did not consider these records. See Moore ex rel. Moore v. Barnhart, 413 F.3d718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

Also, upon determining Plaintiff's RFC, the ALJ considered the observations of the State Agency employee who took Plaintiff's application. Tr. 19.  This person reported that Plaintiff had no problems hearing, understanding, concentrating, talking, and answering. Tr. 106. These statements by the State Agency are consistent with Dr. Hall's stating, on several occasions, that Plaintiff appeared alert and oriented with good eye contact and goal directed thoughts, as discussed in detail above.  Likewise, Dr. Leung and Dr. Cabalar both noted that Plaintiff did not appear to be in apparent distress. Tr. 261, 279.  It can be significant that a claimant appears to be in no apparent distress. See Guilliams, 393 F.3d at 802 (considering that the claimant's treating doctor noted during several examinations that the claimant "appeared to be in no significant distress").

---

[3]         The court addresses, below, in greater detail, the ALJ's consideration of the opinions of Dr. Lipsitz and Dr. Cabalar.

Also, consistent with the Regulations, prior to determining Plaintiff's RFC the ALJ considered Plaintiff's testimony and statements concerning his daily activities. See SSR 96-7p. The ALJ considered that Plaintiff testified that he had a limited lifestyle; that he did house and yard work, although it took a long time; that he sometimes drove around; that he could handle his finances; and that he fished, sometimes. Tr. 11. The ALJ set forth Plaintiff's testimony in detail and found him not credible to the extent he alleged disabling pain. Tr. 15-16. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins, 177 F.3d at 692). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities including visiting neighbors, cooking, doing laundry, and attending church were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon determining his RFC and that his decision, in this regard, is supported by substantial evidence.

Upon determining Plaintiff's RFC the ALJ considered the combination of Plaintiff's physical and mental impairments. See Lauer, 245 F.3d at 703. The ALJ identified Plaintiff's functional limitations and assessed his work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737. In conclusion, the court finds that the ALJ's determination of Plaintiff's RFC is based upon substantial evidence on the record and that it is consistent with the case law and Regulations. See McKinney, 228 F.3d at 863.

The ALJ posed a hypothetical to a Vocational Expert ("VE") which included the limitations which the ALJ found credible. Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). The VE testified that there is work in the economy which a person with Plaintiff's RFC can perform, which work includes surveillance system and simple clerical work, such as an addresser, sorter, markup and document preparer. Tr. 55-56. Because the hypothetical question posed to the ALJ precisely set forth all of Plaintiff's impairments found credible by the ALJ, the VE's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations);

Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). As such, the court finds the decision of the ALJ that Plaintiff is not disabled is supported by substantial evidence.

**B.      Opinions of Dr. Cabalar and Dr. Lipsitz:**

Plaintiff contends that the ALJ should have given controlling weight to the May 13, 2008 opinion of Dr. Cabalar, who was his treating rheumatologist, that Plaintiff can stand/walk less than two hours and sit about two hours in an eight hour day; that he needs a job that permits shifting positions at will; that he can not engage in repetitive lifting; that he can occasionally lift less than ten pounds; and that he is limited in the upper extremities. Tr. 265. Dr. Cabalar treated Plaintiff for over a year, examined Plaintiff multiple times, and diagnosed Plaintiff with degenerative joint and degenerative disc disease. Plaintiff also contends that the ALJ should have given controlling weight to the opinion of Dr. Lipsitz, an examining doctor, that Plaintiff has both marked and extreme limitations in the areas of dealing with the public, supervisors, and co-workers, and that he is unable to respond appropriately to usual work situations and changes in routine work settings.

The ALJ considered that Dr. Cabalar opined that Plaintiff cannot perform a range of sedentary work which would translate into an eight hour workday. Consistent with the Regulations, the ALJ considered that, ordinarily, as Plaintiff's treating doctor, Dr. Cabalar's opinion would be given controlling weight and that, to be controlling, a medical opinion must be supported by clinical and diagnostic data and must be consistent with other medical opinions. Tr. 11. Indeed, the opinions and findings of a plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). If they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000)

(citing <u>Ghant v. Bowen</u>, 930 F.2d 633, 639 (8th Cir.1991); <u>Kelley v. Callahan</u>, 133 F.3d 583, 589 (8th Cir.1998)).

The ALJ found, however, that Dr. Cabalar's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and that it was inconsistent with other substantial evidence in the record. The ALJ, therefore, did not give Dr. Cabalar's opinion controlling weight. While Dr. Cabalar opined that Plaintiff could walk for less than two hours, sit for two hours, and could occasionally lift less than ten pounds, Plaintiff's MRI's and other tests, as discussed above, in regard to Plaintiff's RFC, establish otherwise. As noted by the ALJ, MRIs showed mild disc bulging and mild degenerative disc disease. <u>See</u> <u>Prosch</u>, 201 F.3d at 1013. <u>See</u> <u>also</u> <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

Moreover, Dr. Cabalar's own records refute her conclusion regarding Plaintiff's limitations. As considered by the ALJ, Dr. Cabalar reported in April and May 2007 that Plaintiff had full range of motion and no joint effusion in his shoulders; that his fingers and hands had no evidence of synovitis; and that he had no joint effusion and full range of motion in his right and left knees. <u>See</u> <u>Hacker v. Barnhart</u>, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); <u>Chamberlain</u>, 47 F.3d at 1494; <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023 (8th Cir.1994) (citing <u>Thomas v. Sullivan</u>, 928 F.2d 255, 259 (8th Cir.1991)); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence).

Significantly, the ALJ specifically addressed Dr. Cabalar's treatment notes of April, June September, and December 2007, and May 2008, as set forth above and took into consideration Dr. Cabalar's documented findings in regard to Plaintiff's limitations. Tr. 20-21. See Prosch, 201 F.3d at 1012-13. Moreover, the ALJ imposed restrictions on Plaintiff which were consistent with Dr. Cabalar's statement that Plaintiff cannot perform the full range of sedentary work. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians"); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

To the extent Dr. Cabalar suggested that Plaintiff is unable to work, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). See also Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir.1991)); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory

statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence).

The ALJ did not give controlling weight to Dr. Lipsitz's opinion that Plaintiff has extreme and/or marked limitations in regard to his ability to interact with others because other evidence of record did not support this conclusion. First, upon discrediting Dr. Lipsitz's opinion, the ALJ noted that Dr. Lipsitz's conclusion was inconsistent with Dr. Lipsitz's own report in that Dr. Lipsitz stated that Plaintiff had a bright affect and good concentration. As stated above, a doctor's opinion may be discredited when it is inconsistent with his own records. See Hacker, 459 F.3d at 937.

Second, upon not giving Dr. Lipsitz's opinion controlling weight the ALJ considered that other evidence of record refuted Dr. Lipsitz's opinion, including Dr. Hall's records reflecting Plaintiff made good eye contact. As also noted by the ALJ, Dr. Hall reported in February, April, and June 2008, Plaintiff had a goal-directed flow of thought. In February and June 2008, Plaintiff had normal affect. As stated above, an ALJ may discount a physician's opinion where it is inconsistent with other evidence of record. See Prosch, 201 F.3d at 1013; Cox, 471 F.3d at 907.

Third, it is significant that Dr. Lipsitz opined that Plaintiff's alleged difficulty with social interaction began in 2004, but the medical records do not reflect such a finding. Tr. 299. To the extent Dr. Lipsitz based this conclusion on Plaintiff's self-reporting, rather than on Plaintiff's medical records, Dr. Lipsitz's conclusion is not controlling. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007).

Fourth, the court notes that Dr. Lipsitz was not a treating doctor, but rather a consultant who saw Plaintiff only once. It is well settled that the report of a consulting physician who has seen the claimant only once is of little significance by itself. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir.

1992). See also Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir. 1987) ("T]he report of a consulting physician who examine[s a] claimant once does not constitute 'substantial evidence' upon the record as a whole"); Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987).

Fifth, while the ALJ did not give controlling weight to the opinion of Dr. Lipsitz, the ALJ's RFC finding reflects that he took the opinion of this doctors into consideration and that he imposed significant restrictions on Plaintiff based on Dr. Lipsitz's report. In particular, the ALJ found that Plaintiff can have no more than occasional interaction with co-workers, the public, and supervisors. Moreover, the ALJ imposed greater restrictions in regard to Plaintiff's ability to understand instructions than those imposed by Dr. Lipsitz. Dr. Lipsitz found that Plaintiff's impairment did not affect his ability to understand, remember and carry out instructions, yet the ALJ found that Plaintiff was limited in this regard. Tr. 298. Additionally, the ALJ found that Plaintiff can perform no more than simple, repetitive tasks, while Dr. Lipsitz reported that Plaintiff can understand, remember and carry out complex instructions and make judgments on complex work-related decisions. See Choate, 457 F.3d at 869-70 (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians"); Ellis, 392 F.3d at 994 ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

The court finds that the ALJ gave proper weight to the opinions of Dr. Lipsitz and of Dr. Cabalar; that to the extent the ALJ did not give their opinions controlling weight, he gave good reason for doing so; and that the ALJ's decision in regard to the weight given the opinions of Dr. Lipsitz and Dr. Cabalar is supported by substantial evidence on the record and is consistent with the

Regulations and case law. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion).

## C.    ALJ's Credibility Determination:

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ.  Guillams V. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750;  Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).   Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives

good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, upon discrediting Plaintiff's claims of disability, as discussed above, the ALJ considered that the medical evidence failed to support Plaintiff's allegations about his work-related limitations. "[A]n ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (citing 20 C.F.R. § § 416.908, 416.929). See also Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987). Only after the ALJ copiously considered Plaintiff's medical records did he conclude that they do not support Plaintiff's subjective complaints. The court finds that the ALJ's finding regarding the medical evidence is based on substantial evidence and that it is consistent with the case law and Regulations. See Davidson v. Astrue, 501 F.3d 987, 991 (8th Cir. 2007) (holding that an ALJ can discount opinion evidence based on "an appropriate finding of inconsistency with other evidence") complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

Second, as discussed above in regard to Plaintiff's RFC, the ALJ considered Plaintiff's daily activities and found that they were not consistent with his claims. The court finds that the ALJ's findings in this regard are supported by substantial evidence and that they are consistent with the case

law and Regulations. <u>See</u> <u>Goff</u>, 421 F.3d at 792; <u>Eichelberger,</u> 390 F.3d at 590 ; <u>Dunahoo</u>, 241 F.3d at 1038; <u>Onstead</u>, 962 F.2d at 805; <u>Murphy</u>, 953 F.2d at 386.

Third, the ALJ considered that Plaintiff had a good work history and that his lends credibility to his claims.

In conclusion, the court finds that the ALJ's determination of Plaintiff's credibility is supported by substantial evidence on the record and that it is consistent with the case law and Regulations.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and in the Brief in Support of Complaint is **DENIED;** Docs. 1, 16.

**IT IS FURTHER ORDERED** that separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>19th</u> day of July, 2010.